J. C. CLARK, Superintendent, etc., *v.* R. E. TIMS, Assignee.

**Sales — Estoppel — Holder of Senior Judgment.**

The holder of a senior judgment who attends a sale of property under a junior judgment and is permitted to bid the property in at less than its real value on the representations to the attorney of the junior judgment that she would pay that judgment if permitted to bid the property in without competition, is estopped to claim the money arising from the sale to satisfy that judgment.[1]

Appellant, J. C. Clark, superintendent of education of Attalla county, secured a judgment against J. J. Durham, D. L. Smythe, and N. Thomas, and had execution levied on some land belonging

---

[1]
Estoppel operates only in favor of one who, induced by the acts or representations of another, so changes his situation that injury would result if the truth were known. Hart *v.* Foundry & M. Co., 72 Miss. 809; 17 So. 769.

The principle on which the doctrine of estoppel rests is that it would be a fraud for one to assert what his previous conduct has denied when on the faith of that denial others have acted. Staton *v.* Bryant, 55 Miss. 261.

It arises from an act or declaration intended or calculated to mislead another, and on which that other has relied, and has so acted or refrained from action as that injury will befall him if the truth of the act or declaration be denied. Staton *v.* Bryant, 55 Miss. 261.

One is conclusively presumed to have intended fraud if it necessarily and logically results from his conduct. Hilliard *v.* Cagle, 46 Miss. 309.

No precise definition of fraud has been attempted by equity. Hence, each case in which estoppel by reason of fraud is invoked must be determined by its peculiar circumstances. Even silence, when it becomes a fraud, will work an estoppel. Staton *v.* Bryant, 55 Miss. 261.

to N. Thomas, and sold. Mrs. R. E. Tims, who was the assignee of an older judgment against Clark, was present at the sale and bought the land at the sale, with the understanding that she would pay the judgment in favor of appellant. She paid the money bid at the sale to the sheriff of the county, but made a claim to it to satisfy her elder judgment. The sheriff then made a motion for the court to apply the money.

The court directed the money to be appropriated to the payment of the judgment of Mrs. Tims. From that judgment this appeal is taken by Clark. The opinion of the court contains a further statement of the facts.

APPEALED from Circuit Court, Attalla county, C. H. CAMPBELL, Judge.

Reversed and judgment here, April 16, 1883.

*Attorneys for appellant, Haden & Dodd, and W. P. & J. B. Harris.*

*Attorney for appellee, J. Niles.*

Brief of Haden & Dodd:

The claimant in this controversy is estopped to assert any claim to the money in the sheriff's hands by her acts, declarations, conduct and representations, if she had any interest to assert.

Nowhere in the record is it denied that she in person at the sale informed the plaintiff in execution, at the sale of land under execution on the 2nd day of October, 1882, that she would pay the claim off under which the sale was being made, if the parties would not bid against her. Nor is it denied that the value of the property sold at sheriff's sale, where claimant purchased the same, was worth several times the value of $500; and that by her false and fraudulent representations that she would pay off appellant's judgment, she was enabled to buy the said property at a grossly inadequate sum, and that her said representations were made to attorneys for plaintiff, Sheriff Woodward and Captain Brantly, from whom she got the money to pay the same; and that claimant expected to pay appellant's judgment with the money that she and her father got from Captain H. H.

Brantly. She discloses her reasons, after the sale, for borrowing the money.

Again, it is not denied that claimant paid the money over to the sheriff, and that it was by him deposited with Mr. C. C. Kelly; nor did claimant for eight or ten days after sale make any claim to the sheriff or other person for the money.

Can she now claim her great bargain in the land purchase and the money besides? Can she say to the custodian of the judgment roll, the circuit clerk, that the judgment is paid (but the cost) and thus prevent the attorney for appellant giving the ten days' notice the law requires in such cases, and then reap the benefit of an old judgment that she told Captain Brantly was not in the way, and L. P. Connor, the clerk, that it was paid?

And from the foregoing uncontradicted statements as disclosed from the record, claimant is concluded and estopped from saying anything, even the truth, against her own acts, declarations and representations. Welland Canal Co. v. Hathway, 24 Amer. Dec. 51; 19 Johns. 490; 9th Wend. 147; 21 Wend. 97; Corning v. Gould, 16 Wend. 543.

The record shows that claimant's representations were intended to influence, and did influence, others, including appellant, not to bid on the property sold, in consideration of claimant paying appellant's judgment. Hence, she was estopped from claiming the money realized on appellant's judgment. Otis v. Sill, 8 Barb. 108; Delaplaine v. Hitchcock, 6 Hill, 17; 5 Denio, 158.

Again it is not denied, but admitted, that N. Thompson was largely indebted and suits pending, when he attempted to convey all his property to his daughter, who is claimant. *  *  *

A reversal of the judgment of the Circuit Court, and judgment final in this court, ordering the money to be applied in payment of appellant's judgment, is respectfully asked.

Brief of W. P. & J. B. Harris:

*  *  * It was understood by everybody at the sale that the money was to be applied to Clark's judgment. Mr. Thompson, defendant in the execution, went with his daughter, Mrs. Tims, to various parties to borrow money to pay amount bid; the money was borrowed from one Brantly, and the understanding of all the parties was, that the money was to go to pay Clark's judgment. Mrs. Tims had no other way to pay it.

The property was sold for a mere song. It could have been sold, except for the interposition of Mrs. Tims, for three times the amount actually bid. A few days after the sale, when the money was in the hands of the sheriff, Mr. Dodd was notified that Mrs. Tims claimed the money, and asked it to be applied to a prior judgment held by her. This judgment was the White judgment, which had been secretly assigned to Mrs. Tims. The sheriff made his return, stated the dispute, and moved the court to apply the money; the court applied it to the White judgment held by Mrs. Tims. We hold that under the facts in the case she is clearly estopped, by her conduct at the sale, to claim this money. She held this secret assignment of the judgment under which she claims while the sale was going on. She, by her false representations and inducements, caused property which would easily have sold for enough to pay both judgments to be sacrificed. She prevents Clark, who is fully prepared to protect himself, from bidding, by leading him to suppose the money would be applied to his judgment; borrows it with that understanding; pays it in, and when a deed is made to her to the property, comes in and claims the money also, on a judgment which she and her agents have led Clark's attorney to believe had been satisfied. It does not make any difference whether she told Clark's attorney so directly or not. She had told Clark it was paid. She had every reason to know that Clark and his attorney were ignorant of its being unpaid. She had positively led the attorney to withhold bids under the false impression created by her, that his claim was to be satisfied. We know this court is not going to countenance this transaction. The money she paid, and which she now claims, is Clark's, and she is estopped if anyone ever was estopped, by conduct to assert any claim to the fund.

But we call the court's attention to another fact which makes the transaction still more suspicious, which makes the fraud still more apparent. We will take the responsibility of asserting that, if any consideration was paid for the transfer of the White judgment to Mrs. Tims, it was paid by Thompson, the defendant in execution, and the transfer made to Mrs. Tims for fraudulent purposes. When questioned as to the consideration (none is expressed in the assignment, it simply says for valuable consideration), she says, I don't know what I paid for the judgment, nor when I paid it, nor where I got the money. Now is it probable

that a person in the circumstances of Mrs. Tims, could, in fact, be so ignorant on so important a point? As the record shows, she got nothing from her husband's estate; she was in no business, and there is nothing to show that she had any means of support beyond that furnished by her father. . The truth is, that Mrs. Tims paid nothing for the White judgment. It was, in fact, paid by Thompson, the defendant in the execution, and he is merely trying to do now, by means of this judgment, what he attempted to do by his fraudulent deed. It is a part of one and the same scheme. By means of this judgment Mrs. Tims gets a title to the property and pays nothing.

The price of the property, so far as she is concerned, is what she gave for the White judgment. We assert that she gave nothing for that judgment. Will this court countenance such an outrageous piece of fraud? Will it allow the appellant to be entrapped and defrauded in this way?

We deem it useless to cite authorities. This has all the characteristics of an estoppel by conduct. First—We have the concealment of a material fact; that is, the fact that the White judgment was not paid and that Mrs. Tims was going to claim the money. Second—We have Mrs. Tims' representations as to paying the judgment of Clark, when, in fact, she knew she was not going to pay it, or allow the money to be applied to it. Third—Clark was ignorant of the truth of the matter. Fourth—The representations were made with the intention that Clark should act upon them and withhold bids on the property. Fifth—These representations were utterly false and acted upon by Clark to his injury.

The act creating the estoppel must have been expressly designed to influence the conduct of another, and must have influenced it. Such was the case here.

"We then have a clear case of an admission by the defendant, intended to influence the conduct of this man with whom he was dealing, and virtually leading him into a line of conduct which must be prejudicial to his interest. This I understand to be the very definition of an estoppel in *pais*.

"The estoppel is allowed to prevent fraud and injustice, and exists wherever a party in good conscience cannot gainsay his acts or assertions." 5 Denio, 158.

"An estoppel in *pais* is a moral question. It can only exist

where the party is attempting to do that which casuists would decide to be wrong, something which is against good conscience and honest dealing." 6 Hill, N. Y. 17.

We ask for a judgment here applying the money realized at the sheriff's sale to the payment of the judgment of Clark.

Brief of J. Niles:

The question is, as to whether money made under execution sale shall be applied to an older or junior judgment?

In considering this case, the bill of exceptions shows that all the testimony was objected to and received subject to all legal exceptions. This divests the record of a good deal of irrelevant matter. A considerable portion of the testimony was hearsay. The deed from N. Thompson to his daughter, Mrs. Tims, is outside of this case. The statements of persons other than the parties occasionally come up, and under circumstances that render them incompetent.

This case was tried by a judge who sat both as a judge and a jury, and who, being personally acquainted with the parties and all the witnesses, was enabled to give due weight to all the evidence adduced. The old rule then applies: "Not, was the verdict clearly right, but was it manifestly wrong?"

The judgment against N. Thompson in favor of J. D. White, administrator of Frederick White, deceased, was the older judgment of the two, duly enrolled, and unsatisfied. It was a lien on the property of the defendant. If it was in the way of J. C. Clark's judgment, it could easily have been removed out of the way. Inquiry of White and others would have led to the fact that the White judgment was assigned to Mrs. Tims by the plaintiff in that judgment, and was in full force. The records showed no satisfaction of this judgment, and no satisfaction of it was to be presumed, any more than of the Clark judgment.

Mrs. Tims, claimant, and Mr. N. Thompson, defendant, in the case of J. C. Clark, superintendent, were introduced by Clark, the plaintiff, as *his witnesses*. Thompson testified that he had not paid the White judgment nor furnished any money to pay it. Mrs. Times testified that she had paid that judgment with her own money, and taken an assignment from White, and that she was never without money. This is the testimony of plaintiff's own witnesses.

Testimony was introduced in the court below to show that plaintiff's counsel publicly announced that the property offered for sale must bring the amount of the Clark judgment; that a bystander had authorized said counsel to bid $400 for a certain tract of 120 acres, but would not bid at all, if plaintiff would pay the Clark judgment; that she promised to pay that judgment, and thereupon competition ceased, and the lands were struck off to claimant, greatly below their true value. Mrs. Tims, in her testimony, says: "I know you had a bidder at the sale, or you said so, who would bid $400 for 120 acres, near Mr. Stephens. I now recollect your man." Was not this an arrangement by which the lands should be sold at a price greatly below their real value? An arrangement by which all competition was kept down? An arrangement forbidden by public policy? And are not the parties to it *in pari delicto?* And will the courts lend their aid to relieve plaintiff from the predicament in which he has placed himself?

As to the delay in returning the execution, that does not affect this proceeding. The delay was a matter of understanding between plaintiff's counsel and the sheriff. Any irregularity was waived. The sheriff's statement as to the dispute about the priority of lien accompanied the execution on its return into court, and is in accordance with the provisions of the statute.

Whether the deed from N. Thompson to Mrs. R. E. Tims was void as to creditors or not is immaterial and irrelevant, so far as regards this proceeding.

The statement of Conner, the clerk, about claimant saying the White judgment had been paid, or nearly so, is explained by the fact that White, the plaintiff, had been paid, and is consistent with the fact of an assignment to claimant of the White judgment. The fact that claimant proposed to pay the costs in turkeys shows that she had assumed the liability under, if not the control over, the White judgment.

OPINION.—COOPER, J.:

The appellee was the owner of a judgment against her father, N. Thompson, who had conveyed to her the certain lands which were afterwards levied on under a judgment, junior to the one owned by her. At the sale, under this execution, the attorney for the plaintiff, Clark, was present and expressed his intention of

making the lands levied on bring their value, and had procured the attendance of bidders who were prepared to bid for the property. Mrs. Tims, who was present at the sale, expressed a desire to become the purchaser, and upon her assurance and promise that she would pay the judgment of Clark, the attorney sold the lands under his execution, and they were purchased by Mrs. Tims for a sum less than their real value. Mrs. Tims paid her bid to the sheriff, and having done so interposed her claim to the money as the holder of the senior judgment against Thompson. In the court below the money was directed to be appropriated to the payment of her judgment.

We think under the facts shown it would be a fraud upon Clark to permit the money realized by the sale of the lands to be appropriated to the satisfaction of Mrs. Tims' judgment.

*The judgment is reversed,* and a judgment directed to be entered here, directing the money in the hands of the officer to be paid to the appellant.